UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID W. ROGERS,                    )
                                    )
       Petitioner,                  )
                                    )
v.                                  )          No. 4:05 CV 2051 DDN
                                    )
MICHAEL BOWERSOX,                   )
                                    )
       Respondent.                  )

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner David W. Rogers for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court concludes that petitioner is not entitled to habeas relief.

## I.  BACKGROUND

In 2001, petitioner was found guilty by a jury in the Circuit Court of Franklin County, Missouri, of the charge of kidnaping; he was found not guilty of the related charge of attempted rape. He was sentenced to ten years imprisonment. The Missouri Court of Appeals summarily affirmed his conviction. State v. Rogers, 90 S.W.3d 537 (Mo. Ct. App. 2002) (Doc. 11, Ex. E). And on December 19, 2002, the court issued its mandate.[1]

On February 20, 2003, petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id. Ex. F at 1.) That motion was denied without an evidentiary hearing and the denial of post-conviction relief was affirmed. Rogers v. State, 128 S.W.3d 578 (Mo. Ct. App. 2004) (Id. Ex. I). The appellate court mandate was issued on March 26, 2004.[2]

---

[1] See https://www.courts.mo.gov/casenet/cases/searchDockets.do (last viewed September 29, 2008.)

[2] See https://www.courts.mo.gov/casenet/cases/searchDockets.do (last viewed on September 29, 2008.)

Thereafter, on November 23, 2004, petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Texas County, Missouri under Missouri Supreme Court Rule 91; the petition was dismissed on August 26, 2005. (Id. Exs. J, L.)

On October 21, 2005, petitioner commenced this action by filing his habeas petition in the United States District Court for the Western District of Missouri. The action was transferred to this court.

## II.  TRIAL PROCEEDINGS

The record of this matter in the Missouri state courts indicates the following.

Petitioner Rogers was charged by an amended information with the felony kidnaping of [the victim] on August 14, 2000 (Count I) and with felony attempted rape of her in the same incident (Count II). (Doc. 11, Ex. B at 11.)

Before trial, defense counsel filed an amended motion in limine raising seven issues:  (1) to prevent the prosecution from offering into evidence "alleged crimes, bad acts or criminal charges not charged in this case"; (2) to prevent evidence that the petitioner had been untruthful to investigators in an unrelated case; (3) to prevent evidence that petitioner had made a statement to Det. Scott that he had begun to act on his sexual fantasies following an unrelated incident; (4) to prevent evidence that defense counsel had instructed petitioner's family not to allow Det. Scott to re-inspect the petitioner's van several months after the van had been originally inspected by the police; (5) to prevent the victim from testifying about what she feared petitioner might do in the incident; (6) to prevent Det. Scott from testifying that petitioner told him that when he committed the incident it was like something "had snapped"; and (7) to prevent Det. Scott from testifying to three statements petitioner made to the detective. (Id. at 13-16.) The trial judge sustained the motion with respect to items (1) through (6), but overruled the motion regarding item (7).

In their opening statements, both attorneys described what the evidence was expected to be.  In his opening, defense counsel also stated:

Ladies and gentlemen, when you've heard all the evidence, I think you'll see that this case is a case about false imprisonment. It's not a case about kidnapping or attempted rape, not at all. And when you've heard all the evidence and I get to come back and address you for the final time, I'll ask you what I talked to you about in voir dire. I asked you to be juror, follow the law and follow the evidence. And I'll ask you to find David Rogers guilty of what he is guilty of. There's no question but what he is guilty of forcing her into the van against her will and restraining her of her liberty against her will without her consent. And that is the offense of false imprisonment. And I'll ask you to find him guilty of that and punish him within the bounds set by the law for that offense and not for something that he didn't do. Thank you very much.

(Doc. 11, Ex. A-1 at 117.)

The victim testified that on August 14 she was driving from Neosho, Missouri, where she had been visiting her family, back to her home in Michigan, pulling a U-Haul trailer. While on Interstate 44, a van pulled up next to her and the driver signaled that the lights on her trailer were not working.[3] She pulled off the highway at the next exit. The white van followed her off the highway and parked behind her trailer. She immediately called her father on her cell phone and opened her trunk to inspect the wires that connected to the trailer. The driver of the van walked up to her and said he would get some equipment to help her repair the faulty wire connection. She told her father on the phone that the lights seemed to be working all right. He advised her to drive on and find a place to inspect the trailer.

The victim testified that, while the van driver was standing next to the sliding door of his van, she told him that she was going to drive on. Next, the driver of the van walked to her and grabbed her around her arms with his hands. She began screaming, kicking, and biting. He tried to pull her into his open van. She dropped her cell phone on the van's foot rail and he pulled her into the van. She ended up laying on her stomach inside the van with the driver on top of her back. She testified that his hands "were everywhere" on her body. She struggled to the van's dashboard and then to the passenger door which was locked. She testified

---

[3]Before leaving Neosho, her father had to repair the faulty trailer lights.

that while sitting on the passenger seat with her back to the dashboard, she saw his cell phone laying on the seat. The driver had by then gotten into the driver's seat and yelled at her to stay there. She attempted to use the cell phone which did not work. She jumped into the rear of the van, found an object which she used to hit the man on the back of the head.

She testified that at that time the man told her to leave. She then grabbed her cell phone and his cell phone, got out of the van, and ran back to her car, the engine of which was still running. She jumped in, locked the doors, and began to drive away. She called her father again and told her what had happened. In her rear view mirror she saw the white van make a u-turn and drive away. She drove to a service station on I-44 and waited for the police. She showed the police where the incident occurred and she gave the police a statement of what had happened. At the police station she changed her clothes, because a bra strap had broken and a couple of buttons had broken on her blouse.

She testified she never told the police about her clothes. She threw the bra away. However, she had kept and identified to the jury the blouse[4] she wore during the incident.

In the courtroom she identified petitioner as her assailant.

Defense counsel cross-examined the victim about the incident and the statement she gave to the police. Defense counsel offered the victim's written statement into evidence; it was received without objection.

The next witness to testify for the state was Franklin County Sheriff's Deputy Jeff Brennecke. He testified about responding to the service station following the victim's call to the police. The victim was emotionally upset and it took him some ten minutes to get a statement of what happened. She gave him a cell phone, which was received in evidence as Exhibit 7. He testified that the victim was upset and complained about her neck and arms being sore. He noticed a mark on her left arm. He also identified the blouse the victim wore when he interviewed her. He saw no smudges, soiling, or a tear on the shirt and

---

[4]This garment is referred to in the record both as a "blouse" and as a "shirt."

did not seize it as evidence.  He testified about the investigation that evening.

On cross-examination by defense counsel Deputy Brennecke testified that he noticed no torn clothing on the victim and that he did not look for evidence of attempted rape.  When defense counsel asked the deputy whether he considered charging petitioner with felonious restraint, the trial judge sustained the prosecutor's objection as irrelevant.  However, the witness affirmed that his police report indicated that he had asked the victim whether she would prosecute petitioner for felonious restraint and she answered in the affirmative.  The officer also testified that the victim never made any statement that petitioner attempted to have sex with her or that he tried to drive off with her.

The next witness to testify for the state was Franklin County Sheriff's Department Corporal Thomas Leasor who also responded to the victim's original call.  He testified that he did not question the victim.  He also identified the blouse the victim wore when he arrived. He noticed no indication of force applied to the garment.  He was given the cell phone that the victim had taken from the assailant.  He noticed that the phone bore the name of Dave Rogers.  And, while he was holding it, the phone rang.  He answered it and a woman's voice spoke.  She identified herself as the daughter of Dave Rogers.  The officer began to tell the caller where the phone was located, when defense counsel objected to further testimony about the conversation.  After a sidebar conference the prosecutor withdrew the question.  However, the officer was allowed to testify about the woman caller's information about where her father could be located.

On cross-examination the officer testified that the victim never said anything that indicated a reason to investigate her clothing for a sexual attack and never said anything about petitioner making any sexual overtures to her.

The next witness for the state was Franklin County Sheriff's Detective David Scott.  He testified that on August 15 he and a St. Louis County officer drove to petitioner's residence in St. Louis County. There, even though the petitioner's stepfather said he was not in, the stepfather allowed the officers to enter the residence and go to "the

suspect's room" where petitioner was sleeping. The officers woke him up and identified themselves and asked petitioner who he was. The man identified himself as David Rogers. In response to Det. Scott's questions, petitioner said he drove a white van which was parked behind the residence. Det. Scott went out and looked at the van and determined that it matched the description given by the victim. The detective then arranged for a tow company to take the van to an impound lot. The detective identified photos of the van and of the tool (a tile cutter) that the victim said she used to defend herself.

Det. Scott testified that then the St. Louis County officer drove petitioner to the South County precinct office and Det. Scott followed in his vehicle. In an interview room at the police office, Det. Scott interviewed petitioner. First, he orally and in writing advised petitioner of his constitutional rights to remain silent and to counsel. Petitioner read the form out loud to the officer. When asked how petitioner indicated he understood the form, the officer said, "He read the Miranda form, stated he had been through this before and he wished to--." At that time defense counsel objected. At a hearing in chambers defense counsel reminded the court about the motion in limine that had been sustained about the prosecution not getting into petitioner's prior criminal history and asked for a mistrial. The prosecutor indicated that he had no more questions about that area. The trial judge denied the mistrial and the trial resumed.

The detective then testified about the statements made by petitioner in the interview that he had lost the cell phone in Crawford County and that he had been involved with helping two girls at a state park who had locked their keys inside their car. The detective then testified that petitioner then said, "Is this about the girl with the U-Haul?" The detective said it was and asked him what he could tell him about the matter. Petitioner then stated he had stopped to help the girl and was repairing the lights when he saw her slipping down the nearby embankment. He reached to grab her arm to prevent her from falling off the roadway. She freaked out and hit him with her cell phone.

The detective testified that, because the interview room needed to be used by another officer, he drove petitioner to the Sheriff's Office

in Union, Missouri. En route, the interview continued. The officer testified to more statements made by petitioner. Petitioner told him, "he didn't know what happened to him when he grabbed that girl last night. . . . [W]hen he did that it was like something in him snapped, he felt a loss of control and that he upon searching his own self, he really had no explanation for the things that he did." In further questions and answers, both en route and at the Sheriff's office, petitioner described what had happened, events substantially similar to the victim's recounting of the incident. Petitioner also described his motivation for the attack being his sexual fantasies about abducting submissive young women. The detective also identified the written statement petitioner provided to him. The written statement was received into evidence without defense objection.

On cross-examination by defense counsel, Det. Scott described the circumstances of his interview with petitioner, e.g., that there was no video or audio recorder used in the interview. Further, the officer affirmed that petitioner described his fantasies as involving submissive women. And the officer testified that, in his interview of the victim the morning after the assault, he did not notice any tear or rip or buttons missing on her blouse. He testified he was not investigating an attempted rape. The victim never said that petitioner threatened her, tried to kidnap her, tried to leave the area with her, tried to rape her, talked about sex with her, tried for force himself on her sexually, or tried to get her clothes off her. He also testified that he never asked her whether those facts occurred.

When the prosecution rested, defense counsel moved for judgment of acquittal, which was denied.

In the defense case, petitioner's counsel called the victim's father as a witness. He testified on direct examination that five or ten minutes passed between his daughter's telephone calls at the time of the incident. The witness identified his written statement to the police, which was offered into evidence without objection. In a question to the victim's father, defense counsel stated, " . . . I didn't offer this statement to show that he just tried to get her in the car. We conceded that, that Mr. Rogers did force your daughter into the car . . . ." The

victim's father testified that his statement did not include any statement by his daughter about a sexual attack.

With this witness, the defense rested and the state offered no rebuttal evidence. At the close of all the evidence, defense counsel moved for judgment of acquittal on the charge of attempted rape and on the charge of kidnaping because the state did not offer a submissible case on either charge. After a lengthy discussion in chambers during the instruction conference about whether the state offered evidence of a sexual intent of the petitioner, the trial judge denied both motions for judgment of acquittal.

During the instruction conference, defense counsel offered Missouri Approved Instruction--Criminal 3rd ed. 319.24 and 304.02, submitting false imprisonment, arguing that this charge and assault were the only crimes supported by the state's evidence. The trial judge refused to instruct the jury on false imprisonment, because he did not believe this involved a lesser included offense.

The next day, the attorneys made their closing arguments. The prosecutor recounted the evidence in the case and asked for a conviction.

In his closing argument, defense counsel did not argue that petitioner was innocent of the incident that the evidence described. He argued, instead, that the state did not prove the elements of the crimes petitioner was charged with. He agreed that petitioner forced the victim into the van and that she was terrified. He argued that there was no evidence of kidnaping and no evidence he attempted to rape her. He concluded his argument thus:

> Ladies and gentlemen, I talked to you in the opening--
> when I made my opening comments to you this morning--or
> yesterday morning. I told you that the evidence wouldn't
> support--would not support the charges of kidnaping and
> attempted rape. I also told you that they would support the
> offense of false imprisonment and maybe felonious restraint,
> two totally separate crimes. I really thought at that time
> that the judge would be able to instruct you on that offense
> and you could find him guilty of those if you found him not
> guilty of attempted rape and kidnaping.
>
> Well, in looking at the law again with the judge in
> chambers, he convinced me because he is a judge that we can't
> offer you that option here. So if he's going to be charged
> with those crimes, the prosecutor will have to do that

separately.  And he can.  He has the power to do that.  If you acquitted him on attempted rape and kidnaping because the evidence doesn't support that, if you apply your minds to the instructions and don't let the emotions--You feel for her, I understand that.  But just because they would like to have him convicted of those charges--You've got to have the evidence, and it's not there.  Beyond a reasonable doubt, that was his intent?  Beyond a reasonable doubt, that was his intent? Sexual assault, attempted rape, where is the evidence?  It's not there.  You find him not guilty on those charges and tell the prosecutor to charge him appropriately--felony restraint, false imprisonment--he'll plead guilty.

     MR. PARKS [Prosecutor]:    Your Honor--

     THE COURT:    Mr. James, there's an objection .

     MR. PARKS:    That invades the province of the Court, and that's not the issue before the Court today.

     THE COURT:    Overruled.  I think he can make his argument.

(Id. at 234.)

     MR. JAMES [Defense counsel]:    You tell by your verdict.  And he's not going to walk scott free.  He doesn't get to do that.  He can charge him and lock him up.  and he'll get counseling and serve the time that's required for that. But for these offenses, it's not right, it's not fair.  And maybe deep in our emotions that's what we'd like to do, because we'd like to speculate as to what could have happened. That's not our jobs.

     What's the evidence show was going to happen?  And it's not there.  It's just not there.  If they will charge him with the offenses of which he has confessed to and which he's guilty of, he'll plead guilty and take his medicine and get some counseling.  His folks don't approve of what happened. They're very supportive.  They will make sure that happens. Thank you very much.

     THE COURT:    Mr. Parks?

        STATE'S CLOSING ARGUMENT (CONT'D)

     MR. PARKS:    What you have here today, folks, is what you've got.  Because double jeopardy has set in, and I can't charge him with anything else.  So you need to find him guilty of these.

        * * *

> MR. JAMES:        I object, because that's not true.  I
> couldn't.  If it was double jeopardy, I could offer that
> instruction.  It's a different offense.
>
> MR. PARKS:        I can't offer that.
>
> MR. JAMES:        It's a misstatement to the jury.
>
> MR. PARKS:        No, it's not.

(Doc. 11, Ex. A-2 at 233-35.)

In a discussion outside the presence of the jury, the defense attorney argued that he was precluded from offering a lesser included offense instruction as he had requested and because the court ruled that felony restraint and false imprisonment were not lesser included offenses of the charged offenses.  Therefore, the defense attorney argued that the prosecutor was not prevented by the Double Jeopardy Clause from charging Rogers anew, if he was acquitted in this case.  The prosecutor argued he was so prevented from recharging petitioner.  Although the trial judge believed defense counsel was correct, she said she would have to do some research on the issue.  At that point the prosecutor said, "I won't argue.  You can tell them to disregard it."  Defense counsel then said, "I'd ask you to do that," and the judge said, "All right.  Let's go." (Id. at 239.)  Thereafter, the court addressed the jury.

> THE COURT:        Back   on   the   record.   Ladies and
> gentlemen of the jury, I would ask--in fact, instruct you at
> this time to disregard the prosecutor's comments to the effect
> that he cannot charge the defendant with a different crime.
> You may proceed, Mr. Parks.

(Id.)  Next, the prosecutor finished his argument that the state's case had proven the elements of the crimes charged against petitioner.

During the jury deliberations which followed the court's instructions, the jury asked to see the statements of the victim and the victim's father, and to see the victim's blouse.  The items were provided to the jury.  (Id. at 244-45.)

At the conclusion of their deliberations, the jury rendered verdicts of guilty of kidnaping (and assessed punishment at 10 years) and not guilty of attempted rape.  (Id. at 246-47.)

At the time of sentencing, in support of his motion for a new trial, defense counsel argued that, because of Det. Scott's statement that, when

- 10 -

he was advising petitioner of his <u>Miranda</u> rights, petitioner said he understood those rights because he had been through it before. He argued that this testimony was not relevant and violated the court's ruling on the pretrial motion in limine. (<u>Id.</u> at 249-57.) The court denied the motion and sentenced petitioner to ten years imprisonment. (<u>Id.</u> at 259.)

### III. FEDERAL GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner Rogers's petition for a writ of habeas corpus in this court alleges eight grounds for relief:

1. Petitioner received constitutionally ineffective assistance of counsel because:

    a. counsel's trial strategy was based on an incorrect supposition that the jury could or would convict petitioner on a lesser included offense of felonious restraint, although the prosecutor did not charge petitioner with this crime and felonious restraint is not a lesser included offense of kidnaping; and

    b. counsel conceded to the jury that petitioner was guilty of "something";

    c. counsel failed to object to the introduction into evidence of the victim's clothing;

    d. counsel discouraged him from testifying at trial;

    e. counsel failed to investigate or suppress statements made by petitioner to investigating detectives;

    f. counsel was not familiar with the statutory elements of the charged crime;

    g. counsel failed to submit a proposed jury instruction about the percentage of time that he would be statutorily required to serve upon conviction; and

2. The trial court erred by not dismissing the case sua sponte when the court failed to instruct the jury that the state could refile different charges and that double jeopardy would not attach as the prosecutor argued to the jury in closing.

(Doc. 1).

Respondent argues that petitioner did not commence this action within the one-year limitations period, including any appropriate tolling

period, provided by 28 U.S.C. § 2244(d).  The court concludes that respondent is incorrect and that this action was timely filed.

## IV.  DISCUSSION

### Timeliness of this federal habeas action

In pertinent part, 28 U.S.C. § 2254(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;[5]

>              * * *

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2254(d)(1)(A), (2).

The one-year limitations period of 28 U.S.C. § 2254(d)(1)(A) begins the day after either:

1.  the day on which all direct criminal appeals in the Missouri state courts are final with the Missouri Court of Appeals's issuance of its mandate and no discretionary review by the Missouri Supreme Court was sought; or

2.  if discretionary review of the affirmance on direct appeal was requested of the Missouri Supreme Court, the day on which review by the Supreme Court of the United States, if any, becomes final; or

3.  if discretionary review of the affirmance on direct appeal was requested of the Missouri Supreme Court, but no petition for a writ of certiorari was filed with the Supreme Court of the United States, the passage of the 90 days within which petitioner could have filed a petition for a writ of certiorari under U.S. Sup. Ct. R. 13.1.

---

[5]28 U.S.C. § 2254(d)(1) lists three other events which may also trigger the limitations period, but these events are not relevant to the present case.

<u>Riddle v. Kemna</u>, 523 F.3d 850, 855-57 (8th Cir. 2008)(en banc); <u>Bishop v. Dormire</u>, 526 F.3d 382, 383-84 (8th Cir. 2008).

In Rogers's case, there is no indication in the record that Rogers sought discretionary review with the Missouri Supreme Court on direct appeal. Therefore, the one-year federal habeas limitations period began to run on December 20, 2002, the day after the Missouri Court of Appeals issued its mandate affirming the conviction on direct appeal.[6] Without tolling the limitations period, the period would end 365 days later on December 20, 2003.

Petitioner is entitled to two periods of tolling, the first of which began with the filing of his post-conviction relief motion, 62 days after the limitations period began.

### Tolling for the Rule 29.15 motion

Under the tolling provision of 28 U.S.C. § 2254(d)(2), the time petitioner spent litigating his motion for post-conviction relief under Mo. S. Ct. R. 29.15 is not included in the one-year limitations period. Therefore, the 577 days from February 20, 2003, when petitioner filed his motion for post-conviction relief, until the appellate court mandate was issued on March 26, 2004, are excluded. Thereafter, without more tolling, petitioner had 303 days in which to file his federal petition.

### Tolling for Rule 91 habeas corpus proceeding

On November 23, 2004, 242 days after the Missouri Court of Appeals filed its mandate in the post-conviction relief motion case, petitioner Rogers filed a petition for a writ of habeas corpus under Missouri Supreme Court Rule 91 in the Circuit Court of Texas County, Missouri. The circuit court dismissed the petition 276 days later on August 26, 2005. If the Texas County litigation qualified for tolling under §

---

[6]Both petitioner and respondent allow petitioner the 15-day period for filing for discretionary review by the Missouri Supreme Court under Mo. S. Ct. R. 84.17(b). This is incorrect, because petitioner did not seek that discretionary review, the conviction became final with the filing of the mandate of the Missouri Court of Appeals. <u>Riddle v. Kemna</u>, 523 F.3d at 856.

2244(d)(2), petitioner timely filed his federal petition on the 361st day of the 365-day limitations period.

Petitioner is entitled to tolling for the time his habeas corpus petition was before the Circuit Court of Texas County. Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

An application is "filed" when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. Artuz v. Bennett, 531 U.S. 4, 8 (2000). An application is "properly filed" when its delivery and acceptance have complied with the relevant laws and rules that govern filings. Id. These rules usually concern the form of the document, the time frame for its delivery, the court and office where it must be filed, and the requisite filing fee. Id.

These rules do not look to the merits of the underlying claims in the application. Id. "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." Id. The holding of Artuz has been applied to filings under Missouri Supreme Court Rule 91. Storey v. Roper, No. 4:05 CV 2073 JCH, 2007 WL 957313, at *2 (E.D. Mo. March 27, 2007); but see Hamilton v. Dwyer, No. 4:04 CV 161 DJS/MLM, 2005 WL 1668145, at *8 n.2, *9 (E.D. Mo. July 18, 2005), Report and Recommendation adopted by, 2005 WL 2176916 (E.D. Mo. Sept. 6, 2005) (suggesting that a Rule 91 petition was not "properly filed" because it was summarily dismissed by the Missouri Supreme Court).

A Missouri Supreme Court Rule 91 petition that attacks the underlying judgment and acts as a distinct and separate proceeding from the original proceeding, qualifies as "other collateral review" under § 2244(d)(2). See Bishop, 526 F.3d at 384; Storey, 2007 WL 957313, at *4. There is no requirement that the post-conviction petition or "other collateral review" raise a federally cognizable claim to toll the statute of limitations. Bishop, 526 F.3d at 384.

Petitioner is entitled to tolling for the time his Rule 91 habeas petition was pending, until August 26, 2005.

By this court's calculations, of the 365 days in the federal habeas limitations period, as of August 26, 2005, petitioner had used 304 days (the total of the 62 days between the issuance of the Missouri Court of Appeals mandate regarding the conviction and the filing of the Rule 29.15 motion, plus the 242 days between the issuance of the Missouri Court of Appeals mandate regarding the Rule 29.15 proceedings and the filing of the state court habeas corpus proceeding). Thus, after August 26, 2005, petitioner had 61 days in which to file his federal petition.

The federal petition was timely filed in the Western District of Missouri 56 days later on October 21, 2005.

## Procedural Default

Although petitioner filed his federal petition within the federal limitations period, he is subject to being procedurally barred from asserting his grounds for relief in this action, because he did not properly present them to the state courts, at the trial and appellate levels. Lee v. Kemna, 534 U.S. 362, 375 (2002); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997). The procedural bar applies whether the default occurred at trial, on appeal, or during state collateral relief proceedings. Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

In his direct appeal from his conviction and sentence, petitioner argued only that the evidence was insufficient to support the verdict. (Doc. 11, Ex. C at 10.) This ground is not alleged in the federal habeas petition now before the court.

In his pro se motion for post-conviction relief, petitioner alleged (1) he received ineffective assistance of counsel because (a) his trial counsel insisted that he not take the stand to tell the jury his side of the story, and (b) his attorney stated that unlawful imprisonment was a lessor offense to kidnaping; and (2) petitioner was tricked into making a written statement to the police. (Id. Ex. F at 4.)

In his amended motion for post-conviction relief, with the benefit of appointed counsel, petitioner alleged:

(1)    his trial counsel failed to ask for dismissal of the kidnaping charge on the ground that the act of removing the victim was incidental to the underlying felony of forcible rape;

(2)    trial counsel and appellate counsel rendered ineffective assistance for failing to include in the motion for a new trial and on appeal, respectively, the ground that the trial court erred by rejecting petitioner's proffered jury instruction that false imprisonment was a lesser included offense of kidnaping;

(3)    trial counsel rendered ineffective assistance

(a)    by advising petitioner that he was able to submit the lesser included offense to the jury,

(b)    by failing to request that the jury be instructed that he would have to serve 85 per cent of any sentence imposed for kidnaping,

(c)    by failing to object to the prosecutor's closing argument about the operation of the Double Jeopardy Clause in the Constitution,

(d)    by failing to object to the jury instructions because they were misleading because one submitted petitioner's intention as forcible rape and in another mere sexual assault, and

(e)    for failing to move for acquittal following the state's opening statement because the prosecutor failed to state facts sufficient for a submissible case.

(Id. 9-11.)  The circuit judge denied relief on the merits of the claims in summary fashion without giving specific reasons ("This Court finds the specific allegations contained in paragraphs 8, sections (a), (b), (c), (d), (e), (f), and (g) to be without substantial legal or factual basis and are overruled without admitting evidence or testimony in their support").  (Id. at 29.)

On appeal from the denial of post-conviction relief, petitioner argued:

(1)    he received ineffective assistance of counsel because counsel failed to move for acquittal on the kidnaping charge because

the act of removing the victim was incidental to the underlying felony of forcible rape; and

(2) he received ineffective assistance of counsel because counsel failed to raise in the motion for a new trial, and on direct appeal, the trial court's refusal of the proffered instruction on false imprisonment.

(Id. Ex. G at 14-15.)  Neither of these two grounds are alleged in the federal petition.

In his petition for a writ of habeas corpus under Mo. S. Ct. R. 91, filed in the Circuit Court of Texas County, petitioner argued

(1) he received ineffective assistance of counsel because

(a) trial counsel conceded to the jury that he was guilty of some crime,

(b) trial counsel had the mistaken belief that he would be found guilty of the lesser included offense of false imprisonment, when a competent attorney would have known that such was not a lesser included offense of kidnaping,

(c) trial counsel failed to object to the introduction into evidence of the victim's blue blouse,

(d) trial counsel persuaded petitioner that he should not testify at trial, because of the potential cross-examination about prior uncharged crimes,

(e) defense counsel did not investigate the defense that he was merely acting to prevent the victim from being injured by broken glass on the shoulder of the road,

(f) defense counsel did not investigate grounds for moving to suppress his confession to the police,

(g) counsel did not understand the elements of the kidnaping offense with which petitioner was charged,

(h) counsel failed to move to correct false and misleading police testimony,

(i) counsel failed to request a jury instruction that he would have to serve 85 per cent of a sentence for kidnaping; and

- 17 -

(2)     the trial court violated due process by not dismissing the
        case sua sponte when the court failed to instruct the jury
        correctly about the Double Jeopardy Clause following the
        prosecutor's incorrect statement during closing argument.

(<u>Id.</u> Ex. J.)  All of petitioner's federal claims are included in the
grounds alleged in his state habeas corpus petition in the Circuit Court
of Texas County.  The Circuit Court of Texas County denied the habeas
corpus petition because the grounds alleged by petitioner were either
previously adjudicated or should have been presented in the other cases.
(<u>Id.</u> Ex. L.)  Thus, that court did not address the merits of petitioner's
claims on their merits.  And petitioner never sought state habeas corpus
relief in any other Missouri court, circuit or appellate.

        The presentation of the federal grounds in the state court petition
for a writ of habeas corpus under Missouri Supreme Court Rule 91 did not
satisfy the requirement that petitioner properly present the merits of
his federal grounds to the state trial and appellate courts.  Missouri
prisoners, in limited circumstances not present here,[7] may pursue habeas
corpus relief under Missouri Supreme Court Rule 91, but "only to raise
jurisdictional issues or in circumstances so rare and exceptional that
a manifest injustice results."  <u>State ex rel. Simmons v. White</u>, 866
S.W.2d 443, 446 (Mo. 1993) (en banc); <u>Duvall v. Purkett</u>, 15 F.3d 745, 747
(8th Cir. 1994).

        None of petitioner's Rule 91 habeas grounds, which are also his
federal grounds, raise jurisdictional issues and they do not present such
rare and exceptional circumstances that their denial would result in
manifest injustice.  <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381-82 (8th Cir.
1995).  The Rule 91 habeas corpus proceeding in the Missouri state courts
is an extraordinary proceeding that "does not remove a prior procedural
default."  <u>Byrd v. Delo</u>, 942 F.2d 1226, 1231-32 (8th Cir. 1991); <u>see also</u>
<u>Burns v. Gammon</u>, 173 F.3d 1089, 1091 n. 3 (8th Cir. 1999); <u>Schneider v.</u>
<u>Delo</u>, 890 F. Supp. 791, 805 (E.D. Mo. 1995).

---

[7]The circumstances include prisoners who fail to seek either direct
appeal or a post-conviction remedy.  <u>State ex rel. Simmons v. White</u>, 866
S.W.2d 443, 446 (Mo. 1993) (en banc).

Thus, all of petitioner's federal habeas grounds are procedurally barred because they were not properly raised before the Missouri courts, both circuit and appellate.

Petitioner may avoid the procedural bar to federal habeas review if he can demonstrate legally sufficient cause for the default *and* legally sufficient prejudice resulting from it, or if he can demonstrate that failure to review the claims would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish legally sufficient cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with state procedural requirements. Id. at 750-52. Petitioner does not allege or establish a legally sufficient cause for his procedural default in the state courts, i.e. for failing to present his federal grounds for relief on direct appeal or in his post-conviction motion.

A fundamental miscarriage of justice can be demonstrated only if it is shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. A habeas petitioner asserting actual innocence must do so with new, reliable evidence that was not presented at trial; that evidence must be "so forceful that 'it is more likely than not that no reasonable [trier of fact] would have convicted [him] in the light of the new evidence.'" Schlup v. Delo, 513 U.S. 298, 324, 327 (1995); Johnson v. Norris, 170 F.3d 816, 817-18 (8th Cir. 1999).

Petitioner's grounds for relief assert that he is actually innocent, not of criminal activity, but of the criminal activity of which he was convicted. The only new evidence suggested by the record would be petitioner's own testimony, which was not presented at trial. Such evidence may be legally sufficient to overcome the procedural bar. Reasonover v. Washington, 60 F. Supp. 2d 937, 968-69 (E.D. Mo. 1999).

Whether or not petitioner might avoid the procedural bar, the court has reviewed the merits of his grounds for relief and finds them to be without merit.

**Consideration of petitioner's federal grounds**

Habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000) (plurality opinion). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254 (e)(1).

Petitioner is not entitled to an evidentiary hearing in this court, because all of his federal grounds related to matters fully contained in the state court record. Parker v. Norris, 2 F.3d 1154, 1993 WL 298963, at *1 (8th Cir. 1993) (unpublished per curiam); Wedeman v. Solem, 826 F.2d 766, 767 (8th Cir. 1987).

### Ineffective Assistance of Counsel

In Ground 1, petitioner alleges seven specifications of constitutionally ineffective assistance of trial counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined ineffective assistance of counsel under the Sixth and Fourteenth Amendments. The Strickland test requires federal habeas corpus relief if it is shown that "counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686.

There are two elements to a claim of constitutionally ineffective assistance of counsel. A habeas petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. In this regard, petitioner must overcome a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). The strategic choices of counsel made after thorough investigation are virtually unchallengeable, and decisions following a less thorough, but nevertheless reasonable, investigation are to be upheld to the extent that they are supported by reasonable judgment. Strickland, 466 U.S. at 690-91.

If this first threshold requirement is met, petitioner must also demonstrate that the deficient performance of counsel was so prejudicial that the result of the proceedings would have been different absent the error. 466 U.S. at 687; Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir. 1990). In addition, the prejudice must not be simply a "possibility" but an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). When attacking the effectiveness of counsel on constitutional grounds, the petitioner bears a heavy burden. See Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006).

### Grounds 1(a) and 1(b)

Petitioner argues in Ground 1(a) that trial counsel pursued a trial strategy based on the faulty premise that the jury could convict petitioner of a lesser included offense of felonious restraint or false imprisonment. The prosecutor did not charge petitioner with either offense, and neither is a lesser included offense of kidnaping in Missouri. Petitioner also argues that defense counsel supported this strategy by submitting a jury instruction for the assertedly lesser included offense.

In Ground 1(b) petitioner argues that defense counsel rendered constitutionally ineffective assistance by arguing that he was guilty of

something, even though not what the prosecutor had charged.  Petitioner's overall argument is that his defense counsel acted more as a prosecutor than in his defense.  The court disagrees.

The defense strategy described in the record ultimately proved unsuccessful on the kidnaping charge.  However, petitioner has failed to show that this trial strategy was so egregiously deficient as to be tantamount to constitutionally ineffective assistance of counsel.  In fact, this strategy was expressly aimed at disproving one of the requisite elements of the kidnaping charge--that the restraint was for purposes of facilitating a sexual assault.

Under Missouri law, defense counsel is permitted to argue to the jury for strategic purposes that, although the defendant may be guilty of an uncharged offense, he was not guilty of the offense charged.  Alexander v. Missouri, 782 S.W.2d 472, 474 (Mo. Ct. App. 1990).  And the trial court in Rogers's case recognized that defense counsel had the right to make that argument.  (Doc. 11, Ex. A-2 at 234.)

This strategy provided the jury with an opportunity to acquit the petitioner of more serious criminal charges without feeling remorse or guilt that its decision would result in petitioner going unpunished for his arguably culpable actions, which resulted in demonstrable emotional upset for the victim.  And this strategy may have persuaded the jury to acquit petitioner of the attempted rape charge.  Pursuing such a strategy which is available under Missouri law was a reasonable tactic for defense counsel.  Lingar v. Bowersox, 176 F.3d 453, 569 (8th Cir. 1999).

For these reasons, this ground for relief is without merit.


**Ground 1(c)**

Petitioner argues in Ground 1(c)that trial counsel was ineffective for failing to object to the admission of the clothing of the victim as evidence.  This ground is without merit.

The record indicates that the result of the trial would not likely have been different had the clothing been objected to by trial counsel.  As an item of proof it was more probative than prejudicial, especially with regard to the charge of attempted rape.  The victim testified about and identified in the courtroom the blouse she wore at the time of the

attack.  (Doc. 11, Ex. A-1 at 121-35, 187.)  Clearly, the admission of the blouse into evidence was more probative than prejudicial, especially with regard to the charge of attempted rape.

Further, several times during the trial, defense counsel questioned investigators about their not considering the blouse in their investigation, because they did not think petitioner had committed a sexual offense.  Clearly, defense counsel's use of the blouse in this regard and the answers to his questions very likely led to the not guilty verdict on the attempted rape charge.

Petitioner has not demonstrated any likelihood that he would have been acquitted of the kidnaping charge if this evidence had not been considered by the jury.

There being no showing of actual prejudice, this claim fails the Strickland standard and is without merit.

## Ground 1(d)

Petitioner alleges his counsel discouraged him from testifying on his own behalf at trial.  More specifically, petitioner alleges in the body of his petition:

> Defense counsel convinced the petitioner that it was against his interest to testify because his past uncharged crimes would be brought up when in fact they would have been inadmissible or possibly even helpful to the case by showing to the jury that the State was pressing for prosecution based on unsolved similar crimes that he knew the petitioner could not have committed but tried to use as leverage for a guilty plea.

(Doc. 1 at 5.)  In the attachment to the petition, petitioner alleges:

> Defense counsel offered ineffective assistance of counsel by coercing the petitioner into not testifying at trial even when the petitioner repeatedly told defense counsel he wanted to testify that he was innocent.  Defense counsel mistakenly convinced petitioner that his getting on the stand would be damaging because the State would elicit testimony from the petitioner about past uncharged crimes which would have in fact been helpful to the petitioner as the petitioner was never seriously a suspect in similar crimes and had affirmative defenses to them.  The State was threatening petitioner with these crimes as leverage to obtain guilty plea and never intended to file charges.

(Id., Attachment at 1.)

The law acknowledges the privilege of every criminal defendant "to testify on his own behalf, or to refuse to do so." Harris v. New York, 401 U.S. 222, 225 (1971). Petitioner was undoubtedly entitled to testify on his own behalf at trial. In order to invoke this right to testify, a defendant must act affirmatively and express the desire to testify to the court, and failure to do so can constitute a knowing and voluntary waiver of this right. United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005). In the present case, petitioner effectively waived his right to testify by acquiescing to the advice of his trial counsel, as he alleges.

The next step in this inquiry is whether waiver of this right was due to ineffective assistance of counsel by the advice that was given. The record indicates that petitioner's past criminal history might have been available for the prosecution to use for impeachment had petitioner elected to testify at trial,[8] the decision not to testify was reasonable and well-informed. See Washington v. Kemna, 16 F. App'x 528, 530 (8th Cir. 2001).

Petitioner has not proffered to this court any planned testimony, other than his denial of committing the charged offenses, that would have been likely to substantially alter the outcome of the trial.

This ground for relief fails under the Strickland test.

### Ground 1(e)

Petitioner alleges that trial counsel failed to investigate or move to suppress statements he made to detectives. Petitioner alleges the following about these statements:

> The state referred and presented testimony to a "confession" given to an investigating detective, when in fact the "confession" was merely a conversation in general about "fantasies" that almost all men about having sex with a stranger. Petitioner never confessed to the crime or events of the crime. The state referred to a "confession" to the jury when in fact there was no confession to the crime. Defense counsel failed to suppress this confession by pretrial motion.

---

[8] This was clearly discussed by counsel and the court in the hearing on the motions in limine. (Doc. 11, Ex. A-1 at 9-10.)

(Doc. 1 at ¶ 12D, p. 5.)  In his addendum to his federal petition, Rogers alleges:

> Defense counsel offered ineffective assistance  of counsel by failing to properly investigate the "confession" presented as evidence at trial, which was in fact a casual conversation with the detective on the way to the police station about fantasies in general in reaction to a reference to a female driving beside them.  Petitioner never confessed to the crime nor to any of the misunderstanding between himself and the victim.  Defense counsel failed to file a pretrial motion to suppress the "confession."

(Doc. 1, Attachment at 1.)

Failure to file a motion to suppress evidence does not automatically demonstrate constitutionally ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986).  Even if strenuously contested, these statements would likely have been ruled admissible at trial due to the waiver by petitioner of his privilege against self-incrimination.  See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).  The record indicates that petitioner's statements to the police were voluntary and made after he signed a written waiver of his constitutional rights to remain silent and to counsel.  (Doc. 11, Ex. A-1 at 156-87.)

In any event, his allegations largely concern not how the state acquired the statements but concern the prosecutor's characterization of them at trial.  In its review of the opening and closing statements of the prosecutor, and of the prosecution's questions of Det. Scott, the officer who interviewed petitioner, and of the answers given by Det. Scott, the court finds no use of "confession" to characterize the statements of petitioner.  They are referred to as "statements."

This ground fails the Strickland test.

### Ground 1(f)

Petitioner also alleges that trial counsel was unfamiliar with the statutory elements of the crime of kidnaping.  This, in substance, is markedly similar to the allegations of Ground 1(a) and (b).  This claim must fail because trial counsel demonstrated knowledge of, and specifically addressed the inadequate proof of, the elements of kidnaping during closing argument.  Counsel stated that there was no evidence to

show that petitioner acted for the purpose of facilitating the commission of sexual assault.  (Doc. 11, Ex. A-2 at 231.)

This ground fails the Strickland standard.

### Ground 1(g)

Petitioner also alleges his trial counsel failed to submit an instruction to the jury about the percentage of time that petitioner would be statutorily required to serve in prison.  Missouri courts have held that failure to instruct about the applicability of parole guidelines, even following a jury request, is not ineffective assistance of counsel.  See Cardenas v. Missouri, 231 S.W.3d 835, 837 (Mo. Ct. App. 2007); Deckard v. Missouri, 110 S.W.3d 891, 895 (Mo. Ct. App. 2005)("parole, probation, suspended sentences, or any other form of judicial clemency are considered extraneous to the jury's determination of guilt and punishment . . . [and] are 'of no concern' to the jury").  Therefore, it is likely the trial court would have refused any request by defense counsel to instruct the jury in this fashion.

Further, the ten-year sentence recommended by the jury was in the middle of the acceptable statutory range.  (Doc. 11, Ex. B at 35.)  See Mo. Rev. Stat. § 558.011(2).  Petitioner has not been able to show anything beyond bare speculation that a lesser sentence recommendation would have been forthcoming from the jury.  Absent such a showing, this ground also fails the Strickland standard.

### Trial Court Error:  Ground 2

Petitioner asserts error of the trial court for failure to dismiss the case sua sponte or instruct the jury as to the right of the state to refile alternative charges against petitioner.  As set forth above, during closing argument, the prosecutor stated to the jurors that they needed to find petitioner guilty of the charges as filed "[b]ecause double jeopardy has set in, and I can't charge him with anything else."  (Doc. 11, Ex. A-2 at 235.)  This argument was objected to by petitioner's trial counsel, and both counsel discussed the matter at length with the court out of the presence of the jury.  (Id. at 235-239.)  After the prosecutor acceded to defense counsel's argument, the trial judge

instructed the jury "to disregard the prosecutor's comments to the effect that he cannot charge the defendant with a different crime." (Id. at 239.)

Petitioner alleges trial court error in two distinct and separable claims. The first is that the trial court erred in not declaring a mistrial on its own motion, even absent a request for mistrial by petitioner or his trial counsel. Federal precedent favors vesting these decisions about whether or not to declare a mistrial with the proper discretion of the trial court judge. See Brock v. North Carolina, 344 U.S. 424, 427 (1953). The Supreme Court has expressly declined to review such decisions with "sharp surveillance," even in situations where a mistrial was granted that later led to dismissal of subsequent charges based on double jeopardy. See Gori v. United States, 367 U.S. 364, 368 (1961).

In the present case, the trial judge was under no obligation to declare a mistrial. Neither defense counsel nor petitioner requested one. Also, after the prosecutor acceded to the defense argument, the trial court took appropriate action to limit the overall effect of the prosecutor's comments on the jury.

The second specification of error involves a purported requirement for issuance of a jury instruction about the ability of the state to prosecute petitioner for a separate offense at a later time. An instruction is only required when there is "genuine danger" that the jury will convict a defendant based on extraneous considerations rather than the evidence adduced at trial. See Delo v. Lashley, 507 U.S. 272, 278 (1993)(quoting Taylor v. Kentucky, 436 U.S. 478, 488 (1978)). The trial court acted properly in this instance by calling for a sidebar conference, discussing the issue raised by the closing argument of the prosecutor, and then giving the jury a clearly worded limiting instruction to disregard the contested argument made by the prosecutor. Petitioner has failed to show that the prosecutor's statement during closing argument created a genuine danger that his conviction would be based on an inability to prosecute for other offenses so as to give rise to a requirement for further, formal instruction. In fact, the trial judge gave an instruction to the jury about this matter, and required

them to disregard the statements of the prosecutor.  (Doc. 11, Ex. A-2 at 239.)

This ground for relief is without merit.

For these reasons, the petition of David W. Rogers for a writ of habeas corpus is denied.  A certificate of appealability will not be granted because petitioner has not made a substantial showing that he has been denied a constitutional right.  28 U.S.C. § 2253(c)(2).

A separate order is issued herewith.


　　　　　　　　　　　　　　 /S/ David D. Noce
　　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE


Signed on October 31, 2008.